Maria LUGO, Individually and on behalf of her minor children Maximo, Clyde and Edwin Lugo, and Dorothy Riley, Individually and on behalf of her minor children Angela and Lauren Paris, and on behalf of all others similarly situated, Plaintiffs,

v.

James DUMPSON, Individually and as Commissioner of the New York City Department of Social Services, and Abe Lavine, Individually and as Commissioner of the New York State Department of Social Services, Defendants.

No. 74 Civ. 5652.

United States District Court,
S. D. New York.

Feb. 24, 1975.

The Legal Aid Society, New York City, for plaintiffs; John E. Kirklin, Elaine C. Buck, Guy Germano, New York City, of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendant Dumpson; Gayle S. Redford, Asst. Corp. Counsel, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of N. Y., New York City, for defendant Lavine; Burton Herman, Asst. Atty. Gen., of counsel.

METZNER, District Judge:

This is a motion in a purported class action for a preliminary injunction to stay the enforcement, operation and execution of New York State Department of Social Services Regulation, 18 N.Y.C.R.R. § 358.8(a)(1)(i). Plaintiffs also move to convene a three-judge court to rule on the constitutionality of the regulation.

Section 358.8(a) requires that recipients of public assistance be sent timely advance notice of any proposed action to discontinue or reduce payments. In cases where termination is predicated on the existence of "probable fraud," timely notice is defined as notice mailed at least five days before the date when such action would become effective. 18 N.Y.C.R.R. § 358.8(a)(1)(i).

Further, unless a fair hearing is requested within this period of timely notice, payments are discontinued without a hearing. § 358.8(c)(1).

Plaintiffs argue that this regulation denies due process of law to public assistance recipients who have been or may be terminated or reduced for probable fraud. They also claim the lack of equal protection of the laws, as there is different treatment for those terminated or reduced for probable fraud, and those adjusted for some other reason.

Pursuant to 18 N.Y.C.R.R. § 358.8(a)(1)(i), a Notice of Intent to Discontinue or Suspend Public Assistance (hereinafter Notice), dated October 15, 1974, was sent to plaintiff Lugo. She received the Notice on or about October 17. On October 21 or 22 she mailed a request for a fair hearing to the Albany address listed in the Notice. A hearing was scheduled for November 14, 1974. Her payments, however, were terminated as of October 20 because timely request for a hearing was not made. Due to the fact that her file was not available on the appointed date, the hearing was adjourned twice, to December 23, 1974. At that time, since the file was still unavailable, she was told that the Notice was being voided and that she would receive retroactive payments from the date of discontinuance. The complaint in this action was filed on December 24, 1974, one day after this "hearing." The order for retroactive payments was formalized on December 31, 1974.

Notice was sent to plaintiff Riley on November 15, 1974. It was received on November 20, 1974, the date listed for discontinuance of benefits. On that date Riley called the Department of Social Services at the telephone number provided in the Notice, requesting a fair hearing. Her payments were discontinued. She had still not received a fair hearing at the filing date of the complaint.

However, New York State contends that Riley was sent a regular "ten-day" notice on November 2, 1974, and that through a clerical oversight, her payments were discontinued because her call

was outside the time limit allowed for that Notice (November 12). It overlooked the fact that her call was timely in terms of the five-day Notice. The State argues that Riley in fact had complied with the provision and in its answer filed January 29, 1975, it has agreed to reinstate her benefits retroactive to the date of discontinuance pending the outcome of a fair hearing.

The State now argues that the case is moot as to both named plaintiffs, that there was no case or controversy as to either on the date of filing the complaint, and that accordingly, the complaint must be dismissed.

 As to plaintiff Lugo I agree. At the time the complaint was filed, it is clear that there was no controversy related to the constitutionality of the regulation, as all proceedings against her had been dropped. She lacked standing to sue as of the date of filing.

As to plaintiff Riley, she had every reason to believe that her benefits were discontinued under Section 358.8(a)(1)(i). Even if the State's version of its mixup is true, there was a real controversy at the time of filing this complaint.

The action of the State in reinstating retroactively Riley's benefits would ordinarily moot the case except for the request for class action certification. In Sosna v. State of Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Court stated:

> "If appellant had sued only on her own behalf, both the fact that she now satisfies the one-year residency requirement and the fact that she has obtained a divorce elsewhere would make this case moot and require dismissal. . . . But appellant brought this suit as a class action and sought to litigate the constitutionality of the durational residency requirement in a representative capacity. When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant." *Id.* 95 S.Ct. at 557. (Citations and footnote omitted) (holding action not moot).

In this case there has been no class certification as yet. However, in a footnote in the *Sosna* case, the Court noted:

> "There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the District Court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." *Id.* at 559 n. 11.

I think that this is just such a case where the circumstances and the possibility that the issue would evade review call for the relating back of class certification.

It is true that this issue does not "evade review" in the context of the rule enunciated in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). There the passage of time moots the claim as to a specific plaintiff. Here the mootness is created by the action of the defendant who could agree to the payment of past-due allotments every time an action is instituted.

When this possibility is coupled with the strong, inexplicable stand taken by the State that its notice provision is perfectly permissible and that it clearly intends to employ it in the future, we have a type of evasion of review situation. See Frost v. Weinberger, 375 F.Supp. 1312, 1318 (E.D.N.Y.1974).

 The circumstances of this case call for relation back of the class certification. As the Court said in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970):

> "[T]ermination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent

resources, his situation becomes immediately desperate." *Id.* at 264, 90 S. Ct. at 1018.

■ It is clear that a class certification is proper in this case. First, all the conditions of Rule 23(a), Fed.R.Civ.P. are met. The class is defined as all New York State residents who were, are, or will be receiving public assistance and who have had, are having, or will have their grants reduced, terminated, suspended or denied pending the fair hearing decision solely because of the enforcement of 18 N.Y.C.R.R. § 358.-8(a)(1)(i). The class is obviously so numerous that joinder would be impracticable; the common questions of law are self-evident; the claim of Riley at the time of the filing of the complaint was certainly typical, namely, discontinuation of benefits due to the operation of the regulation. The class is adequately represented by Riley since it is obvious that counsel would be the same no matter who the plaintiff would be.

Further, the class action is clearly proper under Rule 23(b)(2), as defendants have acted in a manner generally applicable to the entire class in such a way as to allow permanent injunctive relief.

Although it is now the policy of this circuit that in many cases like this class certification is not necessary, Galvan v. Levine, 490 F.2d 1255 (2d Cir. 1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), this is not the proper case for its application. There is every indication that the class is necessary for the purpose of maintaining this action considering the mootness arguments. Further, there is no indication, given the unexplained stand of the State, that it would not continue to enforce the regulation should an injunction issue covering only the named plaintiff. Here, clearly, the class certification is no mere formality.

■ I do not think this case requires the convening of a three-judge court. The Supreme Court has held that such a court need not be convened where the unconstitutionality of the statute is obvious and patent. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, —— n.14, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974).

I find that in this case it is obvious and patent that 18 N.Y.C.R.R. § 358.-8(a)(1)(i) is unconstitutional as denying procedural due process. The mail service in New York being what it is, the five days' notice requirement allows insufficient time within which to request a hearing. Assuming that the notice was mailed on February 1 when the officer signed and dated it (like 4 P.M. in the afternoon), it would have to be received, understood perhaps by seeking outside advice, and a hearing requested in a letter received in Albany February 6. This is just plain impossible. In this very case Riley, on November 20, received her notice dated November 15.

It is true that the regulations do not indicate the form that the request should take. The notice states that it may be by telephone to the local office or by mail to Albany. Incidentally, the form seems to further limit the time by stating that the request be received *"before* the date your assistance is supposed to be discontinued or suspended" (emphasis added). In any event, mailing will be considered the norm for a variety of reasons which need not be detailed here.

There is no question whatsoever in this court's mind that such a period of time is wholly inadequate to provide even the most minimal constitutional protection. This is so obvious and patent that I find it unnecessary under the *Bailey* case to convene a three-judge court to consider the issue.

Defendants rely on the statement in Goldberg v. Kelly, supra, 397 U.S. at 268, 90 S.Ct. at 1020:

"We are not prepared to say that the seven-day notice currently provided by New York City is constitutionally insufficient *per se,* although

there may be cases where fairness would require that a longer time be given."

There was no further discussion by the Court of the time factor which was really not in issue in that case. While seven days may be a borderline situation, five days is clearly insufficient.

Defendant argues that five days' notice is justified when termination is predicated on probable fraud. The question is not the reason for termination, but whether the notice is reasonable to allow a person threatened with an adjustment of benefits to have a pre-adjustment hearing.

The injunction shall issue on notice.

So ordered.