OPINION OF THE COURT

Per Curiam.

We agree with the Appellate Division that in this instance petitioner Linda Dunbar, a recipient of aid to dependent children for herself and her two children, was entitled "[t]o examine the contents of [her] case file and all documents and records to be used by the agency at the [fair] hearing” to be held in response to her request therefor.
In February, 1977 Linda requested a fair hearing with respect to her claim of inadequacy of her grant of public assistance and food stamps, and in connection with that request she demanded access to her entire case file. At a prefair hearing conference, at a subsequent meeting with agency representatives and finally at the fair hearing itself, her request for access to the case file was renewed. In each instance the request was denied. The fair hearing was adjourned without being completed.
*766 At the end of July, 1977 Linda received notice from the agency informing her of the agency’s intention to terminate her receipt of public assistance because she was in possession of assets which rendered her ineligible. Another fair hearing was immediately requested, and in mid-August Linda’s representative sent a letter to the agency demanding access to her entire case file. The present CPLR article 78 proceeding was then instituted to gain access to the file. Both courts below have ordered the agency to grant her access to her entire case file subject to the right of the agency to redact names of informants who are not to be witnesses.* We now affirm that disposition.
New York State, having elected to participate in the Federal aid to families with dependent children program is required to comply with the applicable Federal regulations. (Hagans v Lavine, 415 US 528, 530, n 1; Matter of Jones v Berman, 37 NY2d 42, 52-53.) The pertinent regulation is found in 45 CFR 205.10 (a) (13) (i): "(a) A State plan * * * shall provide for a system of hearings under which: * * * (13) The claimant, or his representative, shall have adequate opportunity: (i) To examine the contents of his case ñle and all documents and records to be used by the agency at the hearing at a reasonable time before the date of the hearing as well as during the hearing”. (Emphasis added.) This regulation, at least in its unpunctuated form, seems to accord Linda the right of access to her case file that was granted her at Special Term and affirmed at the Appellate Division.
The corresponding State regulations, found at 18 NYCRR 357.3 (c), 358.9, 358.12 (a) and (b), and 358.16 (d), purport to limit the recipient’s right to an opportunity to examine only such documentary evidence as the social services official plans to use at the fair hearing. Respondent commissioners advance cogent reasons why the unlimited access accorded by the Federal regulation may in some instances threaten seriously to hamper sound administration of public assistance in general and even hinder the proper handling of individual welfare cases. We are therefore invited by respondents to cut back the apparent sweep of the Federal regulation and to lay down precise access rules of general applicability to all welfare recipients, thereby also resolving differences which ap *767 pear to have arisen in the Appellate Divisions (e.g., Matter of Del Monte v Lascaris, 55 AD2d 1043).
We suggest that any set of standards for the resolution of the broad issues with respect to the right of welfare recipients to have access to their case files is much more appropriately to be designed at the administrative or even the legislative level of government; the judiciary is less well equipped to draft procedural rules for the settlement of such differences as exist or may rise, and may not do so unless compelled in extraordinary circumstances by applicable constitutional or equitable principles.
From one point of view the degree and manner of disclosure adequately to protect the legitimate interests of the welfare recipient may vary from situation to situation. From another perspective, and similarly, there may well be several facets of the problem appropriately to be considered from the point of view of the welfare agency — with respect both to the confidentiality of informant sources and to the integrity and practicability of welfare administration and particularly fair hearing procedures. The volume of requests for fair hearings, and thus the practical implications of the promulgation of any set of rules, gives us pause. Notwithstanding the good faith and best efforts of the litigants to describe the reaches and ramifications of the problem by means of hypothesized and imagined situations augmenting the fact pattern revealed in this particular case, a court has no means for gathering the relevant data, the analysis of which should be undertaken preliminary to drafting balanced and workable disclosure rules. In addition to the promulgation of a usable definition of the scope of disclosure, it may well be that provision should be made for the availability of inexpensive, simple, expeditious procedures for impartial resolution in the small number of cases in which, because of unusual fact situations, the competing interests of recipient and agency cannot be accommodated by more standardized means.
Additionally the courts cannot be perceptive of or sensitive to the responsibilities and dynamics which mark the peculiar relationship which exists or should exist between agency and recipient. It would not be expected that the methodologies and procedures of pretrial discovery fitting for the management of adversary litigation would serve to reconcile the interests of recipient and agency.
These and similar considerations impel us to the conclusion *768 that the design of broad rules should be left to the State Department of Social Services and the Federal Department of Health, Education and Welfare, with appropriate consideration of the interests of welfare recipients. It may be in some few instances that problems of constitutional magnitude will arise; for the most part, however, it would seem that resolution of the cluster of problems associated with access to welfare case files should be left to careful, thoughtful State or Federal rulemaking or legislation.
Because this case presents none of the hypothetical spectres envisioned by the agency and no occasion to order a more restricted disclosure than did Special Term for the protection of the legitimate interests of the agency, judicial self-restraint requires us to dispose of the present appeal without accepting the invitation to enunciate principles of general applicability.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

 The propriety of this condition is not called into question on the present appeal taken by the commissioners.